## UNITED STATES v. URY.
### No. 381.

Circuit Court of Appeals, Second Circuit.
July 26, 1939.

Isaac C. Donner, of New York City, for appellant.

John T. Cahill, U. S. Atty., of New York City (John C. Walsh, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before SWAN, CHASE, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The appellant was charged by information filed by the United States attorney with having violated section 304(d) of the Tariff Act of 1930, 19 U.S.C. § 1304(d), 19 U.S.C.A. § 1304(d), by removing from a number of generators imported from Germany the mark "Germany", indicating the country of origin, with intent to conceal the information given by the mark. The information followed the language of the statute and did not allege what interest the appellant had in the generators, merely describing him as "doing business as the Auto Lectric Distributors," nor did the information charge that the generators were then in commerce.

The appellant, after pleading not guilty, was permitted to withdraw his plea and to file a demurrer on the grounds that the statute was unconstitutional, that no allegations brought him within its permissible scope as a federal penal law, that it was not alleged that the generators were in foreign or interstate commerce when the marks were removed, and that the information did not charge a crime. The demurrer was overruled. The appellant later pleaded guilty and filed a motion in arrest of judgment raising the same points as had his demurrer. The motion was denied, judgment on the plea entered and a fine of $1,500 imposed. This appeal followed.

The questions presented put in issue whether the statute is constitutional and whether the information charged a crime. The plea of guilty did not foreclose the appellant from the review he now seeks. Hocking Valley R. Co. v. United States, 6 Cir., 210 F. 735; Oesting v. United States, 9 Cir., 234 F. 304; certiorari denied, 242 U.S. 647, 37 S.Ct. 241, 61 L. Ed. 544.

The statute which the appellant was charged to have violated is section 304(d) of the Tariff Act of 1930, 19 U.S.C. § 1304 (d), 19 U.S.C.A. § 1304(d). At the time of the alleged offense section 304, in subdivision (a), required that every article imported into the United States and its container and package be conspicuously marked, stamped, branded or labelled in English to indicate the country of origin. Subdivision (b) imposed additional duties on articles not so marked. Subdivision (c) provided for withholding of delivery until marks should be affixed. Subdivision (d) made it an offence to remove or deface any such mark with intent to conceal the information given by it. The words are

these: "(d) If any person shall, with intent to conceal the information given thereby or contained therein, deface, destroy, remove, alter, cover, obscure, or obliterate any mark, stamp, brand, or label required under the provisions of this chapter, he shall, upon conviction, be fined not more than $5,000 or imprisoned not more than one year, or both."

The appellant's argument is that the offence which section 304(d) purports to create would cover the defacing of the mark after the goods have passed from foreign commerce or interstate commerce into local commerce or into the consumer's hands, and that it thus covers acts beyond the power of Congress to regulate. We agree that the defacing that is forbidden is not limited to defacing while the goods are still in foreign or interstate commerce. The statute is broader. It forbids defacing or removal of the mark generally, including a defacing or removal after the goods have come to rest in a state. Congress certainly intended to prevent removal or obliteration of a mark by a retailer while the imported article was on his shelf for sale, and yet the article in such a case has passed from foreign commerce to local commerce. So too the act is comprehensive enough to forbid removal of the mark by the ultimate consumer in a case where the intent in removing is to conceal the information given. But the argument that the statute goes beyond the power of Congress leaves us unconvinced.

The requirement that goods at the time of importation bear marks indicating the country of origin appeared first in the Tariff Act of 1890 (26 Stat. 613) and has been included in all later tariff acts. The purpose was to apprise the public of the foreign origin and thus to confer an advantage on domestic producers of competing goods. Congress was aware that many consumers prefer merchandise produced in this country. No one questions that Congress had power to impose such a requirement on the importation of goods, as an exercise of its constitutional power over commerce with foreign nations. Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525. The provision forbidding later removal of the mark with intent to conceal the information given by it was a supplementary enactment, added for the first time by the Tariff Act of 1922 (42 Stat. 936), and carried forward into the act now in force. Until now its validity has not been questioned.

It is said that the provision goes too far, that it represents an effort to regulate the goods after they have ceased to be subject to federal control. If the provision stood alone, there would be force in the argument. But this enactment is not the equivalent of a statute requiring local retailers to place a mark of origin on all imported goods, goods previously unmarked. It merely commands that a mark already on them by force of a valid federal enactment shall not be disturbed. The provision is one reasonably calculated to render effective the principal requirement that the goods bear a mark at the time of importation. If the marks required on imported goods might later be defaced with impunity, the marking requirement would be evaded and the fair operation of the law defeated. Congress, having exercised its undoubted power to require marks at importation, had also the incidental power to forbid the defacing of the mark at any time after importation. Suppose the statute were that a stamp be affixed by customs officers on all goods brought into the country. Could there be doubt as to the validity of an additional provision making it an offence to remove such a stamp later? We see no substantial difference between such a statute and the one before us.

In Brolan v. United States, 236 U.S. 216, 35 S.Ct. 285, 59 L.Ed. 544, an act of Congress making it criminal to conceal opium unlawfully imported with knowledge of the previous unlawful importation was upheld. While the opium was no longer in foreign commerce, the act was sustained as one in aid of the prohibition of importation. In Yee Hem v. United States, 268 U.S. 178, 183, 45 S.Ct. 470, 471, 69 L.Ed. 904, the court said of the same act: "The authority of Congress to prohibit the importation of opium in any form and, as a measure reasonably calculated to aid in the enforcement of the prohibition, to make its concealment with knowledge of its unlawful importation a criminal offence, is not open to doubt."

We hold that Congress, having provided that all imported goods be marked to show the country of origin, had power

to make it an offence for anyone to remove the mark later with intent to conceal the information given by it. The statute is valid, the information charged the appellant with a criminal offence, and the judgment of conviction is affirmed.