**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jo Anna Newby CARAWAY a/k/a Jo
Newby and Daniel Elden Scales,
Defendants-Appellants.**

**No. 72–2198.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1973.

As Amended Feb. 14, 1973.

Rehearing En Banc Granted April 4, 1973.

Melvyn Kessler, Miami, Fla. (Court-appointed), for Caraway.

Sky E. Smith, Miami, Fla. (Court-appointed), for Scales.

Robert W. Rust, U. S. Atty., Lawrance B. Craig, II, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before RIVES, THORNBERRY and GOLDBERG, Circuit Judges.

RIVES, Circuit Judge:

Defendants, Jo Anna Newby Caraway and Daniel Elden Scales, were charged in a two-count indictment with (1) conspiracy to violate 21 U.S.C. § 952(a),[1] and (2) intentionally and knowingly violating § 952(a) by importing six pounds of marijuana.

Initially, each defendant pleaded not guilty to both counts. After denial of their joint motion to suppress "all evidence seized," both defendants asked and were granted permission to withdraw the plea of not guilty as to Count II and to plead nolo contendere to that count. The district judge, upon accepting their pleas of no contest, admonished defendants in the following exchange:

"THE COURT: . . . . Have each of you had an opportunity to discuss with your lawyers the entry of a plea of nolo contendere as to Count II?

"THE DEFENDANTS: Yes, sir.

"THE COURT: Have your lawyers advised you that there has been an agreement between the Government and defense counsel that should you plead nolo contendere and be found guilty the Court would put Miss Caraway or Miss Newby on probation and

would sentence Mr. Scales to six months?

"Have both of you understood that?

"THE DEFENDANTS: Yes, sir.

"THE COURT: Do each of you agree to that?

"THE DEFENDANTS: Yes, sir.

"THE COURT: Do you both understand that a plea of nolo contendere is tantamount, in effect, to a plea of guilty.

"THE DEFENDANTS: Yes, sir." [Tr. pp. 68, 69.]

"THE COURT: Has anyone, other than what I have said with respect to the agreement with the Government, exercised any force, interrogation or duress of any kind or *made any promises* to you, other than what I have said, in order *to induce you to plead nolo contendere* to this charge?

"THE DEFENDANTS: No, sir.

"MR. SMITH [Attorney for Scales]: The only other statements which were made to the defendants was concerning *their right to appeal,* and the Court advised them that Mr. Scales would be allowed the same condition of release pending appeal?

"THE COURT: Yes, sir." [Emphasis added.] [Tr. pp. 69, 70.]

On imposition of sentence, the Court further informed defendants that:

" . . . . It is the further order of the Court that each of you shall continue to remain at liberty *pending appeal* upon bond under the same terms and conditions heretofore set.

" . . . .

"Now, it is my duty to advise each of you that you have an *absolute right to appeal* from this judgment and sentence and that you are entitled to be represented by an attorney at all

---

1. 21 U.S.C. § 952(a):

"It shall be unlawful . . . to import into the United States from any place outside thereof, any controlled substance in schedule I or II of sub- chapter I of this chapter . . . ., except that . . . [such substance] may be so imported under such regulations as the Attorney General shall prescribe . . . ."

**28**

times. . . . ." [Emphasis added.] [Tr. p. 74.]

Defendants, through this appeal, contest the validity of the warrantless search by Customs Agents of Scales' boat and allege trial court error in denying their motion to suppress the fruits of that search. Since their nolo contendere plea precluded the necessity of introducing evidence, defendants attack a search whose constitutional stature is not a jurisdictional issue.

 Under normal circumstances, a plea of nolo contendere is the legal equivalent of a guilty plea and a waiver of all nonjurisdictional defects. Lott v. United States, 1961, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940; Zebelman v. United States, 10 Cir. 1964, 339 F.2d 484, 485; United States v. Moretti, 2 Cir. 1965, 353 F.2d 672, 673; 3 Wright, Federal Practice & Procedure § 678, p. 140 n. 28. However, when the trial court and defendant enter an explicit agreement that a no contest plea preserves objections to the evidence found admissible by denial of the motion to suppress, this Court has felt constrained to honor such an agreement. United States v. Rosenberg, 5 Cir. 1972, 458 F.2d 1183; United States v. Kelehar, 5 Cir. 1972, 470 F.2d 176. Cf., United States v. Wysocki, 1972, 457 F.2d 1155, 1162. See also Jaben v. United States, 8 Cir. 1964, 333 F.2d 535, 538, aff'd, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345.

In United States v. Doyle, 2 Cir. 1965, 348 F.2d 715, 719, cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84, Judge Friendly recognized that,

"There are a number of ways to deal sensibly with such a case without departing from the principle of Parrino, [United States v. Parrino, 2 Cir. 1953, 203 F.2d 284, 286–287]. *A plea expressly reserving the point accepted by the court with the Government's consent* [4] or a stipulation that the facts are as charged in the indictment are two; failing either of these, the defendant can simply stand on his not guilty plea and put the Government to

its proof without developing a case of his own."

(Emphasis added.) (Footnote omitted.) Continuing, Judge Friendly discussed *Jaben* and quoted from his examination of the record in *Jaben* "not brought to our attention by counsel for either side" that

"* * * this [the record] shows that Jaben pleaded *nolo* on the express condition 'that the defendant will then have an opportunity to have the question as to whether the said count is barred by the statute of limitations decided upon by the Eighth Circuit Court of Appeals or by the Supreme Court, and that the plea of *nolo contendere* is not to preclude the defendant from taking an appeal on the issue at that time.'"

348 F.2d at 719.

 Our rationale for recognizing this type of express agreement is twofold. First, we are reluctant to establish a rigid rule requiring a defendant to undergo the costly and futile ordeal of a complete trial, when the State could easily prove its case by the evidence claimed to be illegally obtained and by no other evidence, and the defendant merely seeks to preserve a single, nonjurisdictional issue. See United States v. Warden of Attica State Prison, 2 Cir. 1967, 381 F.2d 209. Second, of the combined requisites, "voluntariness" and "intelligence" (*see* Brady v. United States, 1970, 397 U.S. 742, 747 n. 4, 90 S.Ct. 1463, 25 L.Ed.2d 747), for equivalence to a valid guilty plea, a *nolo* plea, conditioned on right to appellate review of a motion to suppress evidence, might now (since McMann v. Richardson, 1970, 397 U.S. 759, 768–771, 90 S.Ct. 1441, 25 L.Ed.2d 763) meet the test of being "voluntary," but the conditioning of the plea on a right to appellate review demonstrates that it was not so "intelligently" entered as to waive deprivation of the nonjurisdictional defect sought to be reviewed; and more especially so, where, at the time of pleading, the practice of the review-

ing court is to honor such a condition allowed by the trial court.

In the instant case, the district court apparently induced defendants' nolo contendere plea by repeated assurances that defendants retained an absolute right to appeal. Any criminal conviction is subject to the right of appeal. For the district court in this case to twice guarantee that basic right would have been superfluous if the appeal had not been expected to test the legality of the search. The only district court ruling contested by defendants was denial of their motion to suppress. Hence, the only logical conclusion to be drawn from the district court's pointed references to defendants' right of appeal is that the appeal was clearly understood to encompass the question of illegally obtained evidence. In light of that understanding, this Court is compelled to consider the constitutional validity of the boat search, regardless of that issue's nonjurisdictional character.

The pivotal marijuana, which defendants are charged with importing, arrived at Miami International Airport, from Jamaica, concealed in a steamer trunk. The trunk was addressed to Jo Anna Caraway, 1555 Griffin Road, Miami, Florida (the Marina address). Customs officials, suspicious of the trunk's contents, placed it in the Customs Seizure Room where it lay unclaimed for three days.

On the third day, Mr. Cole, a resident of the Marina where Scales' houseboat was docked, arrived to claim the trunk. Customs officials opened the trunk at the airport in Cole's presence, discovered the marijuana, and immediately arrested Cole. Under interrogation, Cole professed his innocence, implicated the defendants in the importation plot and claimed to have seen defendants smoking marijuana on Scales' boat.

Customs agents, evidently convinced that Cole was blameless, enlisted his aid in conducting a "controlled delivery." The trunk was secured; Cole was in-structed to return to the Marina as planned, and Customs officials secretly closed in on the rendezvous. At the Marina entrance, Scales stopped Cole and apprehensively asked him why he was delayed. Cole panicked and said, "There's marijuana in the trunk and we are all going to get busted." [Tr., p. 26.] Scales then turned to Miss Caraway, who was seated in a nearby car, and said, "Get out of here."

Both Scales and Miss Caraway were immediately arrested. The trunk never left Cole's truck. Yet, Customs officials proceeded to thoroughly search Scales' unoccupied houseboat moored some distance away. This critical search turned up no additional contraband, but did expose letters addressed to Miss Caraway which referred to the marijuana shipment. [This fact does not appear in the record, but on oral argument counsel for Miss Caraway admitted that the letters contained references to the marijuana.]

Not only was Scales' boat unoccupied, but also one of its engines was dismantled on the dock [Tr., p. 49], suggesting that the boat might have been inoperative. Nevertheless, Customs officials proceeded to make a warrantless, exploratory search of the boat.

Customs Agent Larry Morphis, attempting to justify the boat search, testified that,

"The way I figured, if a person is involved in smuggling with airline cargo and he has a boat and he has been known to smoke marijuana and all the other things we had, I figured it indicated a search of the boat, as far as my occupation is concerned." [Tr., pp. 36, 37.]

In answer to later questions by defense counsel, Mr. Morphis elaborated on his reasons for conducting the boat search:

"Q. Agent Morphis, you made the statement that for many reasons you intended to search the vessel. Those were your words, I believe?

"A. Yes.

"Q. Can you list those reasons that you intended to search the vessel?

" . . . .

"A. . . . and that would be that here were the people who lived on the boat who, to the best of my knowledge, appeared to be involved in the smuggling of marijuana via Pan American Airlines Cargo.

"Now, regardless of whether they were innocent or guilty, that along with the fact that they had been known to smoke marijuana and they had a boat, I thought that indicated that this boat should be searched . . . . " [Tr., pp. 41, 42.]

Confronted with these feeble justifications for the boat search, the district judge initially granted defendants' motion to suppress, stating that,

" . . . There is no evidence that Customs ever knew this boat was out of the country. I can't go with you at all on the theory that this is a border search.

"I know of no case in the entire case history which permits as a border search a search, for example, of a home or a permanent place of residence or a boat unless there is some knowledge that that boat has been outside the territorial waters of the United States."

[Tr., p. 53.] After reasoning that Scales' boat was not within the ambit of a border search, the district judge went on to puncture the Government's claim of probable cause.

"I could see their interest in it [the boat], for example, if that steamer trunk had been delivered and taken on board that boat. But here you have a situation where it never did get on board that boat. I don't see how Customs could have any right to search that boat at all without a search warrant, and I don't think they have probable cause, really, to even get a search warrant.

"I am going to grant the motion to suppress, gentlemen."

[Tr., p. 55.] After a short recess and consultation with government attorneys, the district judge abruptly overturned his prior ruling and denied defendants' motion to suppress. He based his sudden reversal solely on 19 U.S.C. § 1581(a), which he had not previously considered. The pertinent portions of 19 U.S.C. § 1581(a) provide that,

"Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters . . . and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to impel compliance."

■ The district judge, in his initial ruling, expressly held that the Customs' boat search was not prompted by probable cause, nor was it within the scope of a legitimate border search. Although he ultimately denied defendants' motion to suppress, the district judge never abandoned that earlier holding. Since the probable cause and border search issues are mixed questions of law and fact, this Court must give strong credence to the district court's ruling on those issues.

■ 19 U.S.C. § 1581(a), admittedly the sole basis for denial of defendants' motion to suppress, does not vitiate the basic protection from unreasonable government intrusions provided by the fourth amendment. That statute, while literally broad enough to support any vessel search, may sweep only as widely as the fourth amendment permits. All searches must conform to the fundamental constitutional test of reasonableness. The warrantless search of Scales' boat was manifestly unreasonable notwithstanding section 1581(a).

I. *The Border Search Justification*

■ Customs officials conducting border searches have the exceptional power to search without probable cause.

Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Cervantes v. United States, 9 Cir. 1959, 263 F.2d 800, 803; King v. United States, 9 Cir. 1965, 348 F.2d 814, 817. That power, although enabling "mere suspicion"-based searches, does not obviate the necessity of compliance with the constitutional standard of reasonableness. Boyd v. United States, 1886, 116 U.S. 616, 623, 6 S.Ct. 524, 29 L.Ed. 746; Morales v. United States, 5 Cir. 1967, 378 F.2d 187.

■■ Border search principles apply to an extended area radiating from the border, but broader than the immediate border area. Government officials may delay the search of a suspect vehicle entering the Country in order to trace the vehicle to its destination and sweep the guilty parties in with the contraband. See Rodriguez-Gonzales v. United States 9 Cir. 1967, 378 F.2d 256; Thomas v. United States, 5 Cir. 1967, 372 F.2d 252; United States v. Henderson, 5 Cir. 1972. 469 F.2d 1074.

■ Customs officials cannot, however, give unreasonable elasticity to the border concept. In outlining the limits of an extended border search, the court in Alexander v. United States, 9 Cir. 1966, 362 F.2d 379, 382, suggested that the government action be tested by

" . . . a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States."

■ Applying the *Alexander* standard, the Customs search of Scales' boat cannot conceivably fall within the ambit of an extended border search. The contraband was never placed on the boat. The boat did not cross any border. The district court ruling simply reinforces that conclusion.

II. *The Probable Cause Justification*

If the Customs officials were outside the bounds of a border search when they entered Scales' boat, their actions cannot be justified unless based on probable cause. But no facts were known which, together with rational inferences from those facts, could have warranted this intrusion. The district judge, when confronted with the evidence, ruled that no probable cause existed. In light of the record before this Court, that decision appears irrefutable.

■ Searches conducted outside the judicial process are per se unreasonable subject to a few well-established exceptions. Katz v. United States, 1967, 389 U.S. 347, 356, 88 S.Ct. 507, 19 L.Ed.2d 576. Accord, Coolidge v. New Hampshire, 1971, 403 U.S. 443, 454–455, 91 S. Ct. 2022, 29 L.Ed.2d 564. Customs officials made a full exploratory search of Scales' boat without a warrant. Yet, there was no danger that the suspect vehicle would escape from the jurisdiction. Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. Nor did Customs agents possess any reliable information suggesting the necessity of an immediate search. Cole's tale of nocturnal pot parties was unsubstantiated, and he was personally involved in the importation as well as previously unknown to law enforcement authorities.

III. *Application of 19 U.S.C. § 1581(a)*

The trial judge reversed his ruling on the motion to suppress solely on the basis of section 1581(a). Section 1581(a) has never been interpreted to grant the sweeping power which its language implies. In Fish v. Brophy, S.D.N.Y.1931, 52 F.2d 198, a New York district court held invalid a warrantless Customs search of defendant's pleasure boat, allegedly authorized by section 581 of the Tariff Act of 1922 (the identically worded predecessor of 19 U.S.C. § 1581(a)). The *Brophy* court ruled that section 581 authorized searches only where the detained boat was required to carry a manifest, and manifests are re-

quired only in the case of vessels arriving in the United States with cargo from foreign ports. The *Brophy* court emphatically stated that, "It is hard to believe that the Legislature intended, in section 581, to place private pleasure boats in the same position as vessels importing cargo into the United States." 52 F.2d at 201.

In a later case involving the Customs' search of a fishing boat, United States v. Coppolo, D.N.J.1932, 2 F.Supp. 115, Judge Avis, in interpreting the exact statute at issue here, rejected the *Brophy* holding that the Tariff Act applied only to vessels carrying cargo from a foreign port. Instead, he found the search illegal under the theory that a government officer has the right to board a vessel to inspect the manifest and observe the cargo, but cannot conduct an exploratory search unless the initial boarding reveals "apparent violation of the navigation or revenue laws."

The Customs' search of Scales' boat was illegal under the rationale of either the *Brophy* or *Coppolo* cases. Scales' boat was apparently inoperable, utilized as a stationary home, and clearly incapable of transporting cargo. To apply section 1581(a) to such a case would impart to that statute unconstitutional scope.

Reversed and remanded.

Granting Motion for Rehearing
En Banc

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

It is ordered that this cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.