John Charles COOKSEY, Appellant,

v.

STATE of Alaska, Appellee.

No. 2076.

Supreme Court of Alaska.

July 19, 1974.

———◆———

Herbert D. Soll, Public Defender, Alexander O. Bryner, Asst. Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Arthur D. Talbot, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The primary issues in this appeal concern interpretation of Criminal Rule 45, Alaska's speedy trial rule.

Appellant John Cooksey was arrested on October 5, 1972, and charged with the crime of assault with a dangerous weapon. On October 27, 1972, an indictment against Cooksey was returned and arraignment was held on October 30, 1972.

■ Cooksey next appeared in superior court on November 21, 1972, at which time he entered a plea of not guilty. Trial was set for the week of February 20, 1973, in order to permit psychiatric evaluation of Cooksey. Cooksey filed a waiver of his speedy trial right under Criminal Rule 45 until that date.[1]

Cooksey was examined by Dr. David Boyd, and Dr. Boyd's report of psychiatric evaluation, dated January 5, 1973, was received by defense counsel on February 1. Prior to the receipt of this report, however, Dr. Boyd was killed in an airplane accident. In view of the doctor's death, defense counsel considered it necessary to file a renewed application for psychiatric evaluation. Consequently, the February 20 trial date had to be cancelled, and in order to obviate any Criminal Rule 45 problem which might arise from the additional delay occasioned by this second psychiatric evaluation, Cooksey, on February 22, 1973,

1. Alaska Crim.R. 45 provides in pertinent part:

 (b) A defendant charged with either a felony or a misdemeanor shall be tried within four months from the time set forth in section (c).

 (c) The time for trial shall begin running, without demand by the defendant, as follows:

 (1) From the date the defendant is arrested. . . .

 . . . . .

 (d) The following periods shall be excluded in computing the time for trial:

 (1) The period of delay resulting from other proceedings concerning the defendant, including but not limited to motions to dismiss or suppress, examinations and hearing on competency. . . .

 . . . .

 (7) Other periods of delay for good cause.
 In light of the provision for exclusion in subsection (d)(1), it was unnecessary for Cooksey to file a waiver for the delay period resulting from the competency examination and hearing. A defendant's waiver may extend a period of exclusion beyond the provisions of Crim.R. 45, but it cannot shorten such excluded periods.

executed a second waiver which provided in part:

> Defendant waives his right of speedy trial from the date February 20, 1973, until such time as the psychiatric evaluation can be completed and his case re-calendared for trial pursuant to normal calendaring procedures followed by the Superior Court of the State of Alaska.

Cooksey was subsequently examined by Dr. Langdon of the Langdon Psychiatric Clinic, who completed his report on May 24, 1973. The Langdon Clinic apparently mailed copies of this report to the superior court, the district attorney's office, and the public defender's office, with the latter two offices receiving copies of the report on May 29, 1973.

The records of the superior court indicate that it did not receive a copy of Dr. Langdon's psychiatric report until July 13, 1973. At that time a hearing was set for July 17 to determine Cooksey's competence to proceed to trial. After the hearing and on the basis of Dr. Langdon's report, Cooksey was found competent to stand trial.

On August 8, 1973, the superior court set September 4 as the trial date and imposed an August 28 deadline by which Cooksey was to submit any motions based upon alleged violations of the speedy trial provisions of Criminal Rule 45. Thereafter, Cooksey filed a motion to dismiss the indictment based upon a purported violation of that rule. After oral argument, the superior court denied Cooksey's motion to dismiss.

On September 4 Cooksey changed his not guilty plea to nolo contendere to the assault with a dangerous weapon charge. This plea was presented to the superior court as a negotiated plea, pursuant to Criminal Rule 11(e).[2] The plea negotiations called for imposition of a five-year sentence of imprisonment, with two and one-half years suspended upon probation, credit given for time already served, and parole eligibility left to the discretion of the parole board. As a further element of the negotiations, Cooksey expressly reserved the right to appeal the superior court's denial of his motion to dismiss for violation of the speedy trial provisions of Criminal Rule 45. The superior court approved the negotiated plea; Cooksey was sentenced in accordance with its terms, and this appeal followed.[3]

---

2. Alaska Crim.R. 11(e) provides in part:

(1) The attorney for the state and the attorney for the defendant may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will move for dismissal of other charges, or will recommend or not oppose the imposition of a particular sentence, or will do both.

(2) If the parties reach a plea agreement whereby a plea of guilty or nolo contendere will be entered by the defendant in the expectation that a specific sentence will be imposed or other charges before the court will be dismissed, then the court shall require the disclosure of the agreement in open court at the time the plea is offered. Once the agreement has been disclosed the court may accept or reject the agreement, or may defer its decision to accept or reject the agreement until receipt of a presentence report.

(3) If the court accepts the plea agreement, the court shall inform the defendant that the judgment and sentence will embody either the disposition provided for in the plea agreement or another disposition more favorable to the defendant.

(4) If the court rejects the plea agreement, the court shall inform the parties of this fact and advise the defendant personally in open court that the court is not bound by the plea agreement. The court shall then afford the defendant the opportunity to withdraw his plea, and advise the defendant that if he persists in his plea of guilty or nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

3. At the sentencing proceedings, the prosecutor declared that the state had no opposition to Cooksey's reservation of the right to appeal the trial court's speedy trial ruling. The record further shows that the superior court allowed Cooksey "to proceed with appeal" on the speedy trial ruling.

Before reaching the merits of the speedy trial issue presented by this appeal, it is necessary to dispose of a threshold procedural question; namely, whether a defendant is entitled to appeal following conviction upon a plea of nolo contendere.

A plea of guilty is generally regarded as a waiver of all non-jurisdictional defects in a case.[4] The plea provides a means by which the defendant may acknowledge his guilt and manifest a willingness to assume responsibility for his actions. A plea of nolo contendere, like a guilty plea, is both an admission of guilt and a waiver of all non-jurisdictional defects.[5]

There are, however, two characteristics of the case at bar that merit special consideration. First, an integral part of the negotiated plea which was accepted by the superior court was the stipulation that Cooksey retained the right to appeal the speedy trial issue despite his plea of nolo contendere. Second, the applicability of the speedy trial provision of Criminal Rule 45 to the case at bar was fully litigated at the pre-trial hearing held on Cooksey's motion to dismiss.

United States v. Caraway, 474 F.2d 25, vacated on other grounds, 483 F.2d 215 (5th Cir. 1973), is similar to the case at bar in these two characteristics. In *Caraway,* the two defendants were charged with the importation of six pounds of marijuana. Both pleaded not guilty to the charge and sought by pre-trial motion to suppress on constitutional grounds all the evidence seized. After denial of the suppression motion, both defendants were granted permission to enter nolo contendere pleas, with the express understanding that they would be able to appeal the denial of the suppression motion. The Court of Appeals for the Fifth Circuit, in a thoughtful opinion authored by Judge Rives, noted that in such a situation the court "felt constrained" to honor the agreement between the lower court and the defendant.[6]

The Fifth Circuit articulated two reasons for recognizing the express agreement for a limited appeal right. First, the Fifth Circuit was reluctant to establish a rigid rule requiring a defendant to undergo the costly and futile ordeal of a complete trial, when the state could easily prove its case by evidence that was alleged to have been

4. *See, e. g.,* Lott v. United States, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961); United States v. Presley, 478 F.2d 163 (5th Cir. 1973); United States v. Doyle, 348 F.2d 715 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); State v. Torres, 281 So.2d 451 (La.1973); 3 C. Wright, Federal Practice and Procedure § 678, p. 140 n. 28 (1969).

5. *See* United States v. Grayson, 416 F.2d 1073 (5th Cir. 1969); McGrath v. United States, 402 F.2d 466 (7th Cir. 1968).

Cooksey argues that since the plea of nolo contendere is not a formal admission of guilt, there is nothing per se inconsistent with the *notion of an appeal from a conviction* based upon such a plea as opposed to a guilty plea. We cannot agree. The incidents of a nolo contendere plea, at least insofar as the particular criminal action in which the plea is offered is concerned, are the same as on a plea of guilty. "The legal effect of a plea of nolo contendere is as conclusive as to the guilt of the defendant as a plea of guilty." Carnes v. United States, 279 F.2d 378, 380 (10th Cir.), cert.

denied, 364 U.S. 846, 81 S.Ct. 88, 5 L.Ed. 2d 69 (1960).

6. Other courts have reached similar conclusions in this situation. *See* Jaben v. United States, 333 F.2d 535 (8th Cir.), aff'd, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345, rehearing denied, 382 U.S. 873, 86 S.Ct. 19, 15 L.Ed.2d 114 (1965); Shreves v. State, 269 So.2d 390 (Fla.App.1972).

In United States v. Doyle, 348 F.2d 715 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965), Judge Friendly disapproved an appeal of a speedy trial issue after a guilty plea. However, Judge Friendly noted with approval the following two approaches to preserving the right to appeal:

A plea expressly reserving the point accepted by the court with the Government's consent or a stipulation that the facts are as charged in the indictment are two; failing either of these, the defendant can simply stand on his not guilty plea and put the Government to its proof without developing a case of his own. 348 F.2d at 719. (footnote omitted)

**1256**

illegally obtained and by no other evidence, and the defendant merely seeks to preserve a single, non-jurisdictional issue. Second, expressly conditioning a nolo contendere plea on a limited right to appellate review demonstrates that the plea was not so "intelligently" entered as to waive the non-jurisdictional defect sought to be reviewed.[7]

■ The entering of a plea by an accused is a critical stage in the criminal proceeding. A plea of guilty or nolo contendere acts as a waiver of many constitutionally-guaranteed rights. Accordingly, courts have been very concerned that a plea of guilty or nolo be both voluntary and intelligently entered.[8] If the plea does not possess both attributes, then it is generally not regarded as valid and binding. If a nolo contendere plea, expressly conditioned upon a limited right of appeal as it was in the present case, is adopted by the trial court the failure of the judicial system to respect that express condition would likely render the nolo plea unintelligent and invalid.

Additionally, the only issue sought to be reviewed by Cooksey is the trial court's interpretation and administration of the four-month speedy trial provisions of Criminal Rule 45. This is a question which was fully argued at a pre-trial hearing. If Cooksey had prevailed, he would have been entitled to dismissal of the indictment, and the state would have been barred from further prosecution for the offense of assault with a dangerous weapon.[9] Since violation of the speedy trial rule was the only specification of error that Cooksey intended to urge on appeal, it would be wasteful of legal resources to require that Cooksey undergo a full trial for the mere sake of preserving the right to appeal the speedy trial ruling of the superior court.[10]

7. Judge Rives observed with regard to this second reason:

[O]f the combined requisites, 'voluntariness' and 'intelligence' (see Brady v. United States, 1970, 397 U.S. 742, 747 n. 4, 90 S.Ct. 1463, 25 L.Ed.2d 747), for equivalence to a valid guilty plea, a nolo plea, conditioned on right to appellate review of a motion to suppress evidence, might now (since McMann v. Richardson, 1970, 397 U.S. 759, 768–771, 90 S.Ct. 1441, 25 L.Ed.2d 763) meet the test of being 'voluntary,' but the conditioning of the plea on a right to appellate review demonstrates that it was not so 'intelligently' entered as to waive deprivation of the nonjurisdictional defect sought to be reviewed; and more especially so, where, at the time of pleading, the practice of the review court is to honor such a condition allowed by the trial court. 474 F.2d at 28–29.

The Fifth Circuit has since this case expressed its disapproval of the practice of accepting pleas of guilty or nolo contendere if coupled with agreements that appeal could be brought. United States v. Sepe, 474 F.2d 784, aff'd on rehearing, 486 F.2d 1045 (5th Cir. 1973).

8. See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Alaska Crim.R. 11; Cf. Lanier v. State, 486 P.2d 981, 984 (Alaska 1971); Hammonds v. State, 442 P.2d 39, 42 (Alaska 1968).

9. Alaska Crim.R. 45(g) provides:

If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the court upon motion of the defendant shall dismiss the charge with prejudice. Such discharge bars prosecution for the offense charged and for any other lesser included offense within the offense charged.

10. See A.B.A. Standards Relating to Criminal Appeals, commentary on § 1.3, at 32 (Approved Draft 1970). Rule 444(d) of the Uniform Rules of Criminal Procedure (Working Draft, May, 1974 at 85); provides that a guilty or nolo contendere plea

bars an appeal based upon any nonjurisdictional defect in the proceedings, except that an order denying (1) a pretrial motion to suppress evidence, or (2) any pretrial motion, which, if granted, would be dispositive of the case, may be reviewed on appeal from an ensuing judgment of conviction.

The proposed rule would allow appellate review of a speedy trial issue like that involved in the case at bar even without an express right of appeal being granted by the court accepting the guilty or nolo plea. The commentary accompanying the proposed rule notes that "[i]f the defendant wishes to surrender that right [of appeal] in order to gain some concessions in the plea agreement process, he is permitted to do so under Rule 443(a) (4), supra." (Working Draft of May, 1974 at 87.)

■ In light of these two circumstances, we feel compelled to decide the merits of Cooksey's claim on the speedy trial issue in the case at bar.[11]

■ We now turn to the speedy trial issue. Cooksey was arrested on October 5, 1972, and was indicted on October 27. Both Cooksey and the state are agreed that the four-month period under Criminal Rule 45 began running as of October 5. On November 21, Cooksey filed a waiver of his right to a speedy trial until February 20, 1973, so that he could secure a psychiatric evaluation prior to trial. On February 20, Cooksey once again filed a waiver of his speedy trial right under Rule 45 until a second psychiatric evaluation could be completed and the case "recalendared for trial pursuant to normal calendaring procedures followed by the Superior Court."

This second psychiatric report was completed by Dr. Langdon on May 24, 1973, and copies were received by the district attorney and the public defender on May 29.

The following facts concerning the mailing and receipt of this second psychiatric report were elicited at the hearing on Cooksey's motion to dismiss.[12] The Langdon Clinic apparently mailed copies of the psychiatric report to the district attorney, the public defender, and the superior court at the same time. In the first part of July, the district attorney, having received his copy of the report on May 29, noted that the court had not yet scheduled any action in Cooksey's case with regard to the report and a competency hearing. The district attorney contacted the superior court to inquire about the case, and the court indicated that it had not yet received a copy of the psychiatric report. A thorough search for the report was conducted, but the search failed to disclose that the court had ever received Dr. Langdon's report. The clinic subsequently mailed an additional copy which was received by the superior court on July 13, and a competency hearing was held on July 17. Cooksey was found to be competent to stand trial, and on Au-

Some states have adopted specific legislation in recent years approving of appeals from pleas of guilty or nolo contendere in limiting circumstances. *See, e. g.,* People v. Chavez, 27 Cal.App.3d 883, 104 Cal.Rptr. 247 (1972) (Calif.Pen.Code § 1538.5, Subd. (m), allowing review of an illegal search and seizure claim after a guilty plea) ; People v. Williams, 40 A.D.2d 586, 334 N.Y.S.2d 587 (1972) (N.Y. Code Crim.Proc., § 813c, McKinney's Consol. Laws, c. 442) allowing review of legality of search despite guilty plea.

11. An argument often urged in support of the contention that there should be no right of appeal from a guilty or nolo plea is that the plea represents an accused's decision, after assessment of the state's case against him, to save himself the agony of trial and perhaps to minimize the penalty that might be imposed. *See* Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) ; McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Whatever validity this argument might have in the general case, it clearly has no relevance to the case at bar. The sentence imposed on Cooksey, subsequent to his nolo plea, was expressly conditioned on his right to appeal the Criminal Rule 45 issue he had raised at the pre-trial hearing. Furthermore, the *speedy trial*

issue—the only issue sought to be appealed —had been fully litigated at the pre-trial hearing and could not be raised again during the course of trial.

We note in passing that the state in its brief submitted to this court agreed that in the case at bar Cooksey's nolo contendere plea should not affect his right to raise the speedy trial issue by appeal.

12. The taking of evidence at this pre-trial hearing on the speedy trial motion was very informal. Counsel for Cooksey presented evidence as to the proper mailing of the psychiatric report to the superior court by the Langdon Clinic in the form of a "stipulation." However, opposing counsel seemed somewhat disinclined to stipulate to the alleged proper mailing, and the court at one point questioned the facts of the stipulation. The trial court itself set forth the particulars of the search in superior court for the missing psychiatric report.

For purposes of this appeal only, we are going to treat the fact of proper mailing of the report to the superior court by the Langdon Clinic and the fact of a thorough but fruitless search for the report by the superior court both as established facts. Neither the state nor Cooksey directly objected to the evidence presented at the hearing either at the time it was presented or on appeal.

gust 8 the court set a trial date of September 4. The crucial period as far as determination of the four-month speedy trial rule is concerned is the period between May 29 and July 17.[13]

Cooksey contends that all but 7–10 days of the May 29 to July 17 period must be included in the Rule 45 four-month computation, and that if this is done the state has clearly failed to bring Cooksey to trial within the required four months. Cooksey argues that his waiver of February 20

> should be construed to extend only up to such time when, after receipt of the second psychiatric examination, the case would have come before the court pursuant to normal calendaring procedures for setting of a new date for trial.

Cooksey concedes that even without his waiver the period of February 20 to May 29 would be an excluded period when computing the crucial four-month period. Criminal Rule 45(d)(1) provides that the period of delay resulting from examinations and hearings on the defendant's competency are to be excluded when computing the time for trial.[14] Cooksey maintains, however, that most of the May 29 to July 17 delay is attributable to the state rather than to his request for the second psychiatric evaluation for two reasons: first, the superior court failed on or about May 29

to assure proper receipt and filing of the report mailed to it, and second, the district attorney failed to take adequate precautions once it received a copy of the report to assure prompt calendaring of the case.

Cooksey's initial argument is that the facts which establish the mailing of the second psychiatric report by the Langdon Clinic and actual receipt of the report by the district attorney and public defender on May 29 create a presumption that the superior court likewise received a copy of the report on or about May 29. Such a presumption would mean, argues Cooksey, that the four-month time period would recommence running within 7 to 10 days of May 29.

 Evidence as to the proper mailing of a letter does create a presumption that the letter was received by the addressee.[15] However, the presumption created is rebuttable.[16] In the case at bar, the superior court also had before it evidence of an exhaustive search undertaken in the superior court for the psychiatric report and the failure of that search to reveal any indication that the report had ever been received by the court. This evidence served to rebut the initial presumption of receipt created by the evidence concerning the mailing of the report. An issue of fact thus presented itself for resolu-

---

13. Both the state and Cooksey agree that the period of October 5 to November 21 is to be included within the four-month computation. This is a period of 47 days. Both the state and Cooksey likewise agree that the period of November 21 to May 29 is an excluded period both under the provisions of Crim.R. 45(d)(1) and the waivers filed by Cooksey. There is further agreement that the periods of July 17 to August 28 and August 30 to September 4 are both periods that should be included within the speedy trial computation. This gives a total of 95 days to be counted toward the four-month period.

Cooksey argues that there should be added to this total all but 7 to 10 days of the May 29 to July 17 period. This would add at least 39 additional days to the 95-day period and push the total well above four months (120 days). The 7 to 10 day period is deleted by Cooksey on the theory that this is the time that would elapse following receipt of the

psychiatric report before the case could be recalendared according to normal superior court calendaring.

14. *See generally* State v. Clouatre, 516 P. 2d 1189 (Alaska 1973).

15. *See* Morse v. Pacific Gas & Elec. Co., 152 Cal.App.2d 854, 314 P.2d 192 (Cal.App.1957).

16. In Rollins v. Liebold, 512 P.2d 937, 943–944 (Alaska 1973), we discussed the effect that should be given a presumption in a jury trial. We adopted the rule that once a presumption is established the opposing party has the burden of proving that the nonexistence of the presumed fact is more probable than its existence. The rule merits adoption in cases tried by the court without a jury as well as those tried by a jury. In any event, the presumption once established can be dispelled by contrary evidence; the trier of fact must resolve the issue with the rule as simply a guide.

tion by the trier of fact. The trial judge concluded that the report had never been received by the superior court. We do not hold this finding to be clearly erroneous.[17]

■ Cooksey argues in the alternative that, even if there is no presumption of receipt of the report, the four-month computation must begin within 7 to 10 days of May 29 since it is uncontested that the district attorney received and perused a copy of that report on that date. Cooksey asserts that it is well established that the prosecution must share with the court the responsibility for assuring that a case is timely calendared. Given the particular circumstances of the case at bar, we cannot agree.

Cooksey places reliance upon this court's decisions in Glasgow v. State, 469 P.2d 682 (Alaska 1970), and Rutherford v. State, 486 P.2d 946 (Alaska 1971), in arguing that the district attorney shared responsibility with the court to see that the case was promptly recalendared following his receipt of the psychiatric report. In both *Glasgow* and *Rutherford,* we held that a defendant's right to a speedy trial was not conditioned upon his demand for compliance by the state with the speedy trial provision. We stated in *Rutherford*:

> [W]e feel it is too much to expect of human nature that a defendant must demand a speedy trial to receive one when he has no assurance as to the outcome of trial. The uncertainty as to the verdict can bring indecision to the innocent as well as the guilty. While trial should vindicate the innocent, such a defendant may nevertheless be apprehensive about the outcome, for even his innocence has

not prevented him from reaching the trial stage of the criminal process. Thus, the innocent defendant is presented with two unhappy alternatives: either not to demand trial, hoping the state will not prosecute, or to demand trial, hoping to vindicate himself in spite of his fear of being found guilty.

> Furthermore, under our system of criminal justice, it is the prosecution which initiates a case and which has the power of going forward with it. In the exercise of this power, it is the duty of the public prosecutor to observe the constitution. 486 P.2d at 950. (footnote omitted)

We do not find the general principle enunciated in *Rutherford* to be determinative of the speedy trial question raised by Cooksey in this appeal. Here we must determine whether the period of delay occasioned by Cooksey's request for a competency report and hearing could be computed as ending within 7 to 10 days of May 29, inasmuch as the district attorney received the psychiatric report on that date. Cooksey had twice requested delays in his trial date so he could secure a psychiatric examination, and the court accommodated his request each time. On May 29, both Cooksey's counsel and the district attorney received copies of the psychiatric report on Cooksey, but the superior court did not receive a copy.[18] Because it was the public defender who requested the delay in the trial date, we think that the responsibility rested as much with him as with the district attorney to see that the psychiatric report was brought to the attention of the superior court so the case could be recalendared.[19] Consequently, Criminal

---

17. *See* Alaska Civ.R. 52(a).

18. In the Anchorage superior court, the task of recalendaring cases is handled by the court.

19. At the pre-trial hearing on the speedy trial issue, the trial court stated:

> My feeling, however, in this case is that also a great responsibility lies on the public defender agency, not only because he had requested the second psychiatric examination but because he had received his copy of the psychiatric examination, to inquire of the

court whether the court had received its copy. Not so much as to forewarn the court that a report had come in but merely to see that his obligations to his client had been carried out so that normal calendaring procedures could be had to safeguard and guarantee the constitutional rights of the defendant. However, this was not done. And I find that the public defender agency rather than take an active participation in this matter has assumed that the court had the responsibility because of the assumption that

Rule 45(d)(1) excludes the entire period of delay from February 20 to July 17 from the four-month computation, inasmuch as the entire delay period resulted from defendant's request for a psychiatric evaluation and hearing. To hold otherwise would tend to transform the speedy trial rule into a hyper-technical device to be manipulated by an accused in order to escape the administration of justice.[20]

■■■ Further, we note that the speedy trial waiver signed by Cooksey on February 20 provided that the right to a speedy trial was waived until the psychiatric evaluation could be completed and the case recalendared for trial "pursuant to normal calendaring procedures followed by the Superior Court." [21] Normal calendaring procedure in the Anchorage superior court, as we mentioned earlier, is for the clerk of that court to recalendar a case relatively promptly after receipt of the psychiatric report. The district attorney does not normally bear recalendaring responsibility. Thus, the plain meaning of the language of Cooksey's waiver leads us to the same conclusion that since the report was not received by the court until July 13, the period of May 29 to July 17 is an excluded period.

Accordingly, we affirm the superior court's finding that Cooksey was not deprived of his right to a speedy trial under the terms of Criminal Rule 45.

Affirmed.

ERWIN, Justice (concurring).

I agree that failure to honor the condition that appellant be allowed a limited right to appeal on the speedy trial issue would render his *nolo contendere* plea unintelligent and involuntary and require that it be vacated. Accordingly, I join in the court's decision to grant review on this issue and specifically concur with the court's resolution of it. However, I reach this decision only because I view the speedy trial issue to be an allegation of a jurisdictional defect. Hence, this case falls within the general rule that a plea of guilty or *nolo contendere* does not bar appeal of a jurisdictional issue.[1]

When a defendant is not brought to trial within the 120-day period defined in Criminal Rule 45,[2] the state is barred from further prosecution and the court is effectively deprived of jurisdiction over the offense set forth in the information or indictment.[3] A claim that the 120-day pe-

---

this court had received the psychiatric report on or about the 24th day of May, 1973. I feel that this responsibility belongs not only with the public defender agency but belongs with the district attorney's office too.

20. In State v. Clouatre, 516 P.2d 1189, 1191 (Alaska 1973), we stated:

It must be kept in mind that the 120 day period set up by Rule 45 is only a basic datum. A considerably longer period could elapse before trial without resultant unfairness or injustice to the accused. Rule 45, with the excluded period set forth therein, merely sets the outer limits of delay. We believe that the rule will work fairly if it is applied according to its objective terminology.

21. As we discussed in note 1, *supra*, a waiver by a defendant of his speedy trial right cannot shorten the period of excluded time under

Crim.R. 45(d). The February 20 waiver in the case at bar was, in our view, superfluous since the May 29 to July 17 period is excluded by the language of Crim.R. 45(d)(1).

We note in passing that a waiver of the speedy trial right for a specifically defined period is highly preferable to the open-ended language utilized in the February 20 waiver. A waiver until a specific date in the future (which waiver could be extended by further waivers) would obviate many of the interpretive difficulties that have arisen in the case at bar.

1. *See* United States v. Mizell, 488 F.2d 97, 99 (5th Cir. 1973); 1 C. Wright, Federal Practice and Procedure § 175, at 379–80 (1969).

2. See note 1 of majority opinion *supra*.

3. *See* State v. Clouatre, 516 P.2d 1189, 1190 (Alaska 1973).

riod has been violated is thus akin to a claim that the indictment or information fails to state an offense,[4] that the underlying statute is unconstitutional,[5] or that prosecution is barred by the statute of limitations [6]—all claims of jurisdictional defects traditionally held to be appealable after pleas of guilty or *nolo contendere*. Hence, a plea of *nolo contendere* conditioned on the right to appeal an alleged 120-day rule violation is proper even under the prevailing view that pleas may be conditioned only upon the right to appeal jurisdictional issues.[7]

I recognize that there is a minority view that a plea conditioned upon a limited right to appeal certain non-jurisdictional issues should be condoned because it would be contrary to sound notions of judicial administration to require a defendant to undergo a costly and possibly lengthy trial when all but one issue could be quickly disposed of by a conditioned plea. However, analysis of the cases espousing this view reveals that, for the most part, the precise non-jurisdictional grounds which are proper subjects of conditioned pleas are usually set forth in a court rule or statute.[8] In the absence of such a rule or statute,[9] I am reluctant to burden the trial judge with the additional responsibility of determining without guidance whether a particular non-jurisdictional issue in a proposed conditioned plea would possibly render the plea unintelligent and involuntary. I would therefore adopt the majority view [10] that accepting pleas of guilty or *nolo contendere* conditioned upon a limited right of appeal on non-jurisdictional grounds is prohibited.

---

4. *See, e. g.,* Kolaski v. United States, 362 F.2d 847, 848 (5th Cir. 1966).

5. *See, e. g.,* United States v. Ury, 106 F.2d 28 (2d Cir. 1939).

6. *See, e. g.,* United States v. Harris, 133 F. Supp. 796, 799 (W.D.Mo.1955).

7. *See* United States v. DeCosta, 435 F.2d 630, 632 (1st Cir. 1970) (court reached speedy trial question following guilty plea).

8. See note 10 of the majority opinion *supra* and the cases cited in United States v. Mizell, 488 F.2d 97, 99–100 (5th Cir. 1973).

9. Alaska R.Crim.P. 11(e) controlling plea bargaining agreements fails to provide any standards for accepting conditional pleas. See note 2 of the majority opinion *supra.*

