**Timothy BILLMAN and Tae
K. Kang, Appellants,**

v.

**MUNICIPALITY OF ANCHORAGE,
Appellee.**

Nos. A–6578, A–6682.

Court of Appeals of Alaska.

March 13, 1998.

---

Michael B. Logue, Gorton & Associates, Anchorage, for Appellants.

Benjamin O. Walters, Jr., Assistant Municipal Prosecutor, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## OPINION

MANNHEIMER, Judge.

The two defendants, Timothy Billman and Tae K. Kang, were convicted of driving while intoxicated, Anchorage Municipal Code 9.28.020(A). On appeal, they assert that they were not brought to trial within the time limits of Alaska's speedy trial rule, Criminal Rule 45, and thus the charges against them should be dismissed. The crucial issue in this appeal is the meaning of an order that this court issued on January 12, 1996, dealing with the hundreds of cases (including Billman's and Kang's) that were held in abeyance pending our decision of *State v. Zerkel,* File No. A–5773. In particular, the issue is whether our January 12th order returned jurisdiction over the defendants' cases to the district court. We agree with Billman and Kang that this order returned jurisdiction of their cases to the district court, thus restarting the defendants' speedy trial calculation under Criminal Rule 45. However, we also conclude that the defendants' scheduled trial date of July 17, 1996 was within the time limits of Rule 45. We therefore affirm the defendants' convictions.

Billman and Kang were each arrested for driving while intoxicated; they submitted to breath tests which showed their blood-alcohol levels to be .10 percent or higher. Based on these breath-test results, the Department of Public Safety took administrative action against both defendants' driver's licenses.

At the same time, the Municipality of Anchorage was pursuing criminal charges against Billman and Kang for driving while intoxicated. The two defendants asked the district court to dismiss the DWI charges on double jeopardy grounds; they asserted that the suspension of their driver's licenses constituted a punishment for their acts of driving while intoxicated, and therefore the double jeopardy clause prohibited the gov-

ernment from trying to punish them again by pursuing the criminal prosecutions.

The district court agreed with the two defendants and ordered the DWI charges dismissed. The Municipality of Anchorage appealed the dismissals to this court. Because we were already considering the same double jeopardy issue in a group of consolidated cases now known as *State v. Zerkel*, we held the Municipality's appeals in abeyance pending our decision of *Zerkel*.

Ultimately, in *State v. Zerkel*, 900 P.2d 744 (Alaska App.1995), this court held that the administrative suspension or revocation of a driver's license does not constitute a "punishment" for double jeopardy purposes—and thus the government can prosecute a defendant for driving while intoxicated (or breath-test refusal) even after the government has taken administrative action against the defendant's driver's license. However, the Municipality's appeals in Billman's and Kang's cases were still held in abeyance pending the Alaska Supreme Court's action on a petition for hearing (that is, a petition for discretionary review) in *Zerkel*.

On December 4, 1995, the Alaska Supreme Court denied hearing in *Zerkel*. Five weeks later, on January 12, 1996, this court issued an order dealing with all of the DWI and breath-test refusal cases that had been held in abeyance pending a final decision in *Zerkel*. In Paragraph 2(a) of that order, we addressed "all cases [like Billman's and Kang's] where criminal charges were dismissed based on a trial court ruling that administrative suspension or revocation of the defendant's driver's license barred a later prosecution for a related driving offense":

> [T]hese cases shall be REMANDED to the trial courts for further consideration in light of this court's decision in *Zerkel*. Any previously filed motion for stay that has not already been granted shall be deemed to have been granted *nunc pro tunc*.

As we recently held in *Garcia v. State*, 947 P.2d 1363 (Alaska App.1997), the Rule 45 calculation for all of these *Zerkel*-related cases was restarted at Day 1 when we remanded these cases to the district court. Our January 12th order was apparently distributed the following Monday—that is, on January 15, 1996—so Day 1 for Rule 45 purposes was January 16th. *See Nickels v. State*, 545 P.2d 163, 165 (Alaska 1976) (when an event triggers Rule 45, the following day is deemed Day 1).

No action was taken in Billman's and Kang's cases until April 23rd. On that day, the Municipality filed formal motions asking the district court to reconsider its earlier dismissals of the two defendants' cases in light of *Zerkel*, and to set the defendants' cases for trial. Three weeks later, on May 15th, Billman and Kang filed oppositions to the Municipality's motions; the two defendants argued that the time for bringing them to trial under Rule 45 had already expired. On June 26th, the district court granted the Municipality's motions, set aside its earlier dismissals of Billman's and Kang's prosecutions, and calendared the defendants' trials for July 17, 1996.

■ The oppositions filed by Billman and Kang on May 15th were, in effect, motions asking the district court to dismiss their cases on Rule 45 grounds. The filing of these motions tolled the running of Rule 45. *See* Criminal Rule 45(d)(1); *State v. Angaiak*, 847 P.2d 1068, 1072 n. 5 (Alaska App.1993). The question, then, is whether Rule 45 had already expired on May 15th.

■ The district court denied the defendants' motions to dismiss because the court concluded that, in our January 12th order, we did not return jurisdiction over the defendants' cases to the district court. The district court interpreted our order to mean that, for all of the *Zerkel*-related cases covered by Paragraph 2(a), we asked the district court to reconsider any previously-entered dismissals in light of *Zerkel* but, at the same time, we retained jurisdiction over all of these cases pending the outcome of the district court's reconsiderations. The district court reached this conclusion based on the fact that Paragraph 2(a) contained the sentence: "Any previously filed motion for stay that has not already been granted shall be deemed to have been granted *nunc pro tunc*."

The district court's interpretation of our January 12th order is mistaken. We did not

retain jurisdiction over the cases covered by Paragraph 2(a) of our order. These cases were explicitly "remanded to the trial courts for further consideration in light of ... *Zerkel*". The sentence of Paragraph 2(a) dealing with "motion[s] for stay[s]" was not intended to signify our desire to retain control of these cases. Rather, we included this sentence to ensure that, among the hundreds of prosecutions held in abeyance pending our decision in *Zerkel*, no case would later be challenged on procedural grounds because we had inadvertently failed to rule on a motion for stay of proceedings (either trial proceedings or appellate proceedings)—motions that we were granting as a matter of course.

Thus, in our order of January 12, 1996, we returned jurisdiction over Billman's and Kang's cases to the district court. For purposes of calculating Rule 45, Day 1 was January 16, 1996—the day following the distribution of our order.

■ However, our January 12th order returned jurisdiction to the district court with directions to give "further consideration" to the defendants' double jeopardy motions in light of *Zerkel*. That is, the district court was directed to re-decide those double jeopardy motions. Thus, the effect of our January 12th order was to place Billman's and Kang's double jeopardy motions under advisement again. And because these defense motions were again under advisement, the Rule 45 computation remained tolled at Day 1. *See* Rule 45(d)(1).

Under Rule 45(d)(1), the Rule 45 computation remained tolled until either (a) the court ruled on the defendants' double jeopardy motions or (b) the court held those motions under advisement, undecided, for longer than 30 days. As explained above, the district court took no action in Billman's and Kang's cases for three months. (Action was finally prompted by the Municipality's April 23rd motion for formal reconsideration of the court's earlier rulings on the defendants' double jeopardy contentions.) Thus, the Rule 45 clock commenced running again on February 15th—the 31st day that the district court held the defendants' motions under

advisement. February 15th effectively became Day 1 for Rule 45 purposes.

This means that on May 15th, when the defendants filed their motions to dismiss on Rule 45 grounds, Rule 45 had not expired. Rather, the Rule 45 clock stood at 91 days: 15 days in February (February 15th through 29th, inclusive), 31 days in March, 30 days in April, and 15 days in May.

On May 21st, the Municipality filed a response to the defendants' Rule 45 arguments. From May 22nd until June 26th, the district court held Billman's and Kang's Rule 45 claims under advisement. Then, on June 26th, the district court denied the defendants' Rule 45 motions and set the defendants' trial for July 17th. When Billman and Kang appeared for calendar call on July 16th, they again moved for dismissal under Rule 45, and again the district court denied their motions to dismiss.[1]

By the time the defendants appeared in court on July 16th, the Rule 45 clock had advanced another 26 days. The Rule 45 clock, which had stopped when Billman and Kang filed their Rule 45 motions on May 15th, began to run again on June 21st—the 31st day that the district court held the defendants' motions under advisement. Thus, the Rule 45 clock was ticking during the final 10 days of June and the first 16 days of July. However, Rule 45 still had not been violated. The total computation now stood at 117 days—the original 91 days (from Feb. 15th through May 15th), plus the additional 26 days (from June 21st through July 16th).

In short, Billman and Kang were scheduled for trial within the time limits of Rule 45. Accordingly, the judgements of the district court are AFFIRMED.

---

1. Ultimately, both defendants entered no contest pleas to the DWI charges, reserving their right to litigate the Rule 45 issue. *See Cooksey v. State*, 524 P.2d 1251, 1255–56 (Alaska 1974). They do not assert that any further time elapsed under Rule 45.