Donal Michael WEBB, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1050.

Court of Appeals of Alaska.

June 20, 1986.

Walter Share, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Donal Michael Webb appeals after being convicted on his plea of no contest to a charge of possessing approximately four-and-one-half pounds of marijuana with intent to distribute, in violation of AS 11.71.-040(a)(2) (misconduct involving a controlled substance in the fourth degree). Webb argues on appeal that the superior court erred in denying his motion to suppress evidence.[1] We affirm.

On July 25, 1984, an employee of Purolator Express Service in California, during a routine inspection, discovered marijuana in a package being sent from Paintlick, Kentucky, to Anchorage. The package was addressed to Mike Webb and listed an Anchorage address and telephone number. Purolator contacted police officers in California, who in turn contacted the Alaska State Troopers, related the circumstances, and shipped the package to them in Anchorage. Alaska State Trooper Sergeant Dally received the package on July 27. He opened it, photographed its contents: nine baggies containing a total of approximately four-and-one-half pounds of marijuana. After resealing the package, Dally turned it over to Purolator's agent in Alaska, DHL. He then contacted Webb at the telephone number listed on the package and told him a package had arrived.

Webb soon appeared at the DHL office and claimed the package. He placed it, unopened, in his car and drove away. Af-

---

1. In entering his plea, Webb reserved his right to appeal the suppression issue. *See Oveson v. Anchorage,* 574 P.2d 801, 803 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251, 1256–57 (Alaska 1974).

ter a short distance, Webb was stopped by three troopers. Sergeant Dally ordered Webb out of his car, advised him of his *Miranda* rights, and asked for his driver's license. The other troopers apparently frisked Webb for weapons. The package, still unopened, was seized from the car. It was later reopened, and chemical testing confirmed that its contents were marijuana.

After being stopped, advised of his rights, and patted down, Webb was told he was not under arrest. When he asked to have his driver's license back, however, he was informed that it would not be returned unless he accompanied the troopers to their airport office to make a statement. Webb agreed to go. He drove to the airport in his own car, with trooper patrol cars in front of and behind him.

Upon arrival at the airport, Webb was taken to the troopers' office. There, after being readvised of his *Miranda* rights and being again informed that he was not under arrest, Webb told the troopers that the package contained marijuana, which he had ordered sent to him with the intent to resell it in Anchorage. After completing his statement, Webb was given his license and allowed to leave.

Prior to trial, Webb moved to suppress all of the evidence in the possession of the Alaska State Troopers on the ground that it had been seized without a warrant and without probable cause. Webb also moved to suppress all statements he had made on the ground that the statements were fruits of his unlawful seizure and detention. Alternatively, Webb contended that his statements were not voluntary. After a hearing, Superior Court Judge Karl S. Johnstone denied Webb's suppression motion.

On appeal, Webb challenges the validity of the Alaska State Troopers' warrantless inspections of the package containing marijuana. He argues that, because the troopers had the time and the opportunity to obtain a search warrant for the package—both after initially receiving it from California and after seizing it from Webb's car—they were required to do so.

■ We find, however, that the warrantless searches of the package were justified under *McConnell v. State*, 595 P.2d 147, 152–55 (Alaska 1979), *cert. denied*, 444 U.S. 918, 100 S.Ct. 235, 62 L.Ed.2d 173 (1979). In *McConnell*, the Alaska Supreme Court adopted the "reassertion of control" doctrine first announced in *United States v. DeBerry*, 487 F.2d 448 (2d Cir.1973). The doctrine generally applies when a private person discovers a package containing contraband and turns it over to the police, who forward it to its destination for a controlled delivery. Under the doctrine, no warrant is required for the police to reseize and reopen the package at its destination, provided that the following criteria are met:

> First, contraband must be placed in transit from one person to another. Second, the contraband must be initially discovered through lawful means, such as a search by a private person. Third, law enforcement officials must come into lawful possession of the contraband. Seizure of contraband after it is observed in plain view is one method of acquiring lawful possession. Fourth, authorities in possession must forward the parcel to authorities at the intended destination under controlled circumstances. Thus, the receiving authorities must have information enabling them to identify the parcel when it arrives, such as a description of the container and its contents. Fifth, the parcel must be under security or under reasonably continuous surveillance by authorities once it arrives at its destination. The reasonably continuous surveillance must continue after the consignee claims the container. Finally, any substantial break in the chain of custody will vitiate the lawfulness of the search.

*McConnell v. State*, 595 P.2d at 154–55.

■ In the present case, the conduct of the Alaska State Troopers in seizing and reopening the package that had been shipped from California falls squarely within the *McConnell* criteria. Because the troopers merely reasserted control over a package that had initially been lawfully seized and searched and had subsequently

remained under continuous police control or surveillance, no warrant was required, even though ample time may have existed to allow a warrant to be obtained.

■ Webb next argues that the troopers lacked probable cause for arrest when they stopped him and escorted him to their office at the airport. The state concedes that the circumstances surrounding Webb's initial detention and his transportation to the airport supported the conclusion that Webb was in custody when he gave his statement to the troopers. In the absence of probable cause for arrest, Webb's statement would thus be subject to suppression as the fruit of an unlawful arrest, even if he knowingly waived his rights and made the statement voluntarily. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Webb's contention that there was no probable cause for his arrest is predicated on the lack of specific evidence to indicate, prior to his stop, that he knew the package he had received contained contraband. Webb relies on *Egner v. State,* 495 P.2d 1272 (Alaska 1972), where the supreme court held that the defendant's mere presence, together with other occupants, in a car containing an open package of drugs was insufficient evidence to support a conviction for knowing possession of the drugs.

We find *Egner* to be readily distinguishable from the present case. The court in *Egner* dealt not with the issue of probable cause, but rather with the more rigorous requirement of proof beyond a reasonable doubt: at issue in *Egner* was the question whether sufficient evidence existed to permit a conviction. The distinction between probable cause and proof beyond a reasonable doubt is significant, for in a later case involving one of Egner's co-defendants, the Alaska Supreme Court concluded that the evidence was sufficient to support a finding of probable cause for arrest. *See Howes v. State,* 503 P.2d 1055, 1059–60 (Alaska 1972).

There are other distinctions between the present case and *Egner.* Here, the package containing drugs was addressed to Webb and listed his telephone number. Webb was contacted at that number and personally claimed the package shortly thereafter. He proceeded to drive away with it in his exclusive possession. While Webb did nothing specific prior to being stopped to indicate that he was aware of the contents of the package, neither did he do anything specific to indicate that he might be unaware.

Although we find the situation in the present case to be a close one, we believe that the totality of the circumstances known to the troopers when they stopped Webb was sufficient to support an inference that Webb's possession was probably knowing. There are, to be sure, many instances where people receive packages without being aware of their contents. The issue, however, is whether it is reasonable to infer that awareness is likely when a package is addressed to a person and when that person, after being called, promptly claims the package and, without any further inquiry or expression of surprise carries it away. Particularly when a package is known in advance to contain significant quantities of controlled substances, we believe such an inference to be appropriate, since it seems reasonable to assume from the high cost of such contraband and from its illegal character that it will relatively rarely be sent casually, to an unsuspecting or unwitting recipient. On balance, we conclude that the facts here were sufficient to establish probable cause for Webb's arrest.

■ Webb also argues that the troopers' refusal to return his operator's license until he accompanied them to their airport office to make a statement amounted to an unlawful seizure of the license without probable cause. Webb asserts that his statement should have been suppressed as a fruit of this unlawful seizure. Although the seizure of Webb's license was undeniably an important aspect of the seizure of his person and, indeed, was one of the

primary factors establishing that Webb was in custody when he gave his statements, our holding that probable cause existed for Webb's arrest is dispositive of his claim with respect to seizure of the driver's license. Because the troopers had probable cause to arrest Webb, they were necessarily empowered to seize his license, an article in Webb's personal possession at the time he was stopped and taken into custody.

 Webb's final claim is that the seizure of his license rendered his statement involuntary. Webb emphasizes his own uncontroverted testimony at the suppression hearing: Webb testified that he was told the license would be returned only if he accompanied the troopers to their office and made a statement. On appeal, Webb argues that this promise was sufficient to overbear his will and resulted in a confession that was not voluntary.

Webb's claim is not supported by the record. Webb did testify at the suppression hearing that the seizure of his license caused him a certain amount of confusion as to his status, because he did not understand how the police could assure him he was not under arrest yet refuse to return his license. This, among other things, apparently led Webb to believe that he was not free to leave. Nevertheless, Webb was twice informed of his *Miranda* rights. Before giving his statement to the troopers, he expressly indicated that he understood those rights. At the suppression hearing, Webb never claimed that he did not understand his *Miranda* rights. At no time did Webb claim that he believed he was obligated to make a statement. Nor did Webb

testify that his decision to talk with the police was influenced to any appreciable extent by a desire for his license or by the police promise to return his license if he made a statement. In short, our independent review of the totality of the record convinces us that Webb's decision to waive his *Miranda* rights and make a statement was voluntary.[2] *See Sprague v. State*, 590 P.2d 410, 413–14 (Alaska 1979); *Lowry v. State*, 707 P.2d 280, 283–85 (Alaska App. 1985); *Hampel v. State*, 706 P.2d 1173, 1179–82 (Alaska App.1985).

The conviction is AFFIRMED.

---

**2.** Our review of the appellate record indicates that the issue of voluntariness was raised below only in passing, after the suppression hearing had been held. The issue was not among the grounds Webb relied on in originally moving to suppress. Accordingly, the evidentiary hearing below focused almost exclusively on the issue of whether Webb was in custody when he gave his statement and, if so, whether probable cause existed for his arrest. Although Webb's counsel briefly argued the issue of voluntariness after the suppression hearing, he provided the superior court with no authority on the point. On appeal, Webb did not raise the voluntariness of

his confession as an issue in his statement of points on appeal. Although voluntariness was included in the statement of issues in Webb's opening brief on appeal, no argument or discussion of the issue was presented, and no authorities were cited in the body of the brief. On appeal, the issue was actually discussed for the first time in the appellee's brief. Webb argues the issue for the first time in his reply brief. Although we have elected to decide the voluntariness issue on its merits, we do not condone the manner in which the issue has been presented, which verges on amounting to abandonment.