**Don Michael WEBB, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–1714.**

Supreme Court of Alaska.

June 3, 1988.

Rehearing Denied July 14, 1988.

---

**294**

Walter Share, Anchorage, for petitioner.

James V. Gould, William H. Hawley, Jr., Asst. Attys. Gen., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for respondent.

1. Dally opened the package, photographed its contents (nine baggies containing four and one half pounds of suspected marijuana) and resealed the package.

2. *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), provides:

 Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Don Michael Webb (Webb) petitions for hearing on the affirmance of his conviction for misconduct involving a controlled substance in the fourth degree, AS 11.71.-040(a). His petition raises the issue of the admissibility of a statement obtained by conduct which conditioned the exercise of the right to remain silent upon relinquishment of the right to retain a valuable license until taken by due process of law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

California police contacted Sergeant Dally (Dally) of the Alaska State Troopers (troopers) and informed him that Purolator Express Service in California had discovered a package which might contain marijuana. The package was addressed to "Mike Webb" and listed an Anchorage address and telephone number. The package was shipped directly to Dally, in Anchorage, for controlled delivery to Webb.

Dally inventoried the contents of the package[1] and turned it over to DHL, a delivery service, for delivery to Webb. Webb was telephoned at the number on the package and advised that there was a package for him at DHL. Without making any inquiry, Webb came to the DHL offices, picked up the package, placed it in his car, and drove away. He was stopped by the troopers after driving a short distance.

Three troopers assisted in the stop of Webb. Dally asked Webb to produce identification and advised him of his rights pursuant to *Miranda*.[2] Sergeant Bowman

right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question

took Webb's driver's license and recorded information from it, but did not return it to Webb.[3] Dally asked Webb if he would voluntarily follow the troopers to their airport office for an interview. According to Webb, he was told that although he was not under arrest, his driver's license would be returned to him only if he "followed [the troopers] back up to their office and made a statement." Webb then agreed to accompany the troopers and drove his own car to their airport office.[4]

At the office prior to being interviewed, Webb was reminded of his *Miranda* rights. He indicated that he understood his rights but that he "didn't understand why [he] was there [in the office] if [he] had rights." Dally told Webb that he was not under arrest, that he was not going to be arrested and that he was free to leave at any time. Webb then gave a tape recorded statement to Dally in which he admitted he had ordered the marijuana contained in the package with the intent to distribute it for profit. Following this confession, Webb asked for and was given his driver's license and allowed to leave. Later he was charged with misconduct involving a controlled substance in the fourth degree, AS 11.71.040(a).

Prior to trial Webb moved to suppress the package on the ground that it was seized without probable cause or a warrant. He also moved to suppress his con-

fession on the grounds that it was involuntary and the fruit of the unlawful stop and seizure. At trial, the state conceded that Webb had been "seized" and sufficiently taken into "custody" to require a showing of probable cause for arrest. The trial court found that the troopers had probable cause to seize Webb. In addition, the trial court found that "while there may have been a subterfuge[,] unknowing or knowing, it appears to me that *Miranda* vitiates any subterfuge." The trial court denied the motion to suppress the confession and the contents of the package.

In affirming Webb's conviction, the court of appeals concluded that the facts were sufficient to establish probable cause for Webb's arrest. *Webb v. State,* 720 P.2d 953, 956 (Alaska App.1986). Although noting that the issue of the voluntariness of his confession had been raised at trial only in passing, the court of appeals, based upon an independent review of the totality of the record, concluded that Webb's confession was voluntary. *Webb,* 720 P.2d at 957 & n. 2.

This petition followed. We reverse.

## II. DISCUSSION

 Webb contends that the seizure and retention of his driver's license, with its return conditioned upon his giving a statement, were coercive and therefore rendered his *Miranda* waiver involuntary.[5]

him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

3. The package, still unopened by Webb, was seized from inside the car. The package was later reopened and chemical testing confirmed that its contents were marijuana.

4. Webb was "escorted" by the troopers with one trooper car in front of him and one trooper car behind him.

5. The state argues that this court's statement of the legal issue accepted for review contains the factual misstatement that the troopers threatened not to return Webb's driver's license *unless* he accompanied them to their office to make a statement. This argument is meritless.

The state also argues that this petition is improperly before this court for procedural reasons. First, the state argues that there has not been a contested factual hearing on the issue of voluntariness in either the trial court or the court of appeals. The state contends that Webb's attorney failed to contest the state's claim that Webb had properly waived his *Miranda* rights. However, the transcript shows that the state was aware that the issue of the voluntariness of Webb's confession was being presented. The transcript reveals that, while the testimony of Dally was taken after a discussion between the trial court and counsel regarding whether the probable cause issue was properly raised, Webb's counsel had clearly stated that the voluntariness of Webb's confession and the coercive effect of the seizure of his license were at issue. The state should not now be heard to complain that there was no contested hearing on the facts below.

Second, the state argues that the issue of the voluntariness of the waiver was not properly

The state has conceded that Webb was in custody at the time his license was taken. The sole question then is whether, despite being given *Miranda* warnings,[6] Webb's confession was the product of the coercive effect of taking and retaining his driver's license.

In *Miranda* the Supreme Court extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police.

The court reasoned:

[W]ithout proper safeguards the process of incustody interrogation of persons suspected or accused of crime contains inherently compelling pressures.... In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights....

... [W]e cannot say that the Constitution necessarily requires adherence to any particular solution for the inherent compulsions of the interrogation process as it is presently conducted.... However, unless we are shown other procedures which are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it, the following safeguards [the *Miranda* warnings] must be observed.

384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719–720.[7] The decision also cautioned that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." 384 U.S. at 476, 86 S.Ct. at 1629, 16 L.Ed.2d at 725.

In both adult and juvenile proceedings involving promissory inducements, we have quoted with approval from *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897):

"But a confession in order to be admissible must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."

*Id.* at 542–43, 18 S.Ct. at 187, 42 L.Ed. at 573 (quoting 3 Russell on Crime, 778 (6th

---

preserved when Webb entered his *Cooksey* plea and that the issue was not properly raised by Webb on appeal. *See Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). *Cooksey* requires that an issue raised on appeal be fully litigated and preserved for appeal, otherwise a nolo contendere plea forecloses appellate review of that issue. *Id.* at 1255. Here, the transcript discloses that Webb argued the issue of voluntariness, and preserved the issue for appeal. Although Webb's counsel could have more clearly broken out the fourth and fifth amendment issues, the record indicates that the issue of voluntariness was ruled on by the trial court and preserved for appeal.

6. *See* note 2 *supra.*

7. We are aware that commentators have observed that in the years since *Miranda* was decided the Supreme Court has repeatedly called the *Miranda* warnings "prophylactic rules" rather than constitutional commands. Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure,* 574–77 (6th ed. 1986); 1 W. LaFave & J. Israel, *Criminal Procedure,* § 6.5, at 482–83 (1984). *See generally Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

At least one commentator has argued that since the Supreme Court has no supervisory power over state criminal justice, if *Miranda* violations are not constitutional wrongs then the Supreme Court has no constitutional authority to reverse state convictions resulting from such violations. *See* Grano, *Prophylactic Rules in Criminal Procedure: A Question of Article III Legitimacy,* 80 Nw.U.L.Rev. 100 (1985).

Despite *Miranda's* arguable lack of a federal constitutional underpinning, the Supreme Court continues to review, and reverse, expansive state court interpretations of *Miranda* unless an adequate and independent state ground is articulated. *See, e.g., Arizona v. Mauro,* — U.S. ——, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987) (decision of Arizona Supreme Court held to misconstrue *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)) (5–4 decision).

This court has never held that *Miranda* type advisements are required under the Alaska Constitution independent of the federal constitution. The parties have not raised that issue in this case and we need not address it now. Until the Supreme Court unequivocally states that *Miranda* violations are not constitutional violations, we need only look to the federal constitution.

ed.)). *See Stobaugh v. State*, 614 P.2d 767, 771 (Alaska 1980) (adult prosecution); *S.B. v. State*, 614 P.2d 786, 789 (Alaska 1980) (delinquency proceeding). Despite invitations to do so, we have not held confessions inadmissible per se when they are the result of "direct or implied promises." Instead we look to the "totality of circumstances surrounding the confession" resulting from a promissory inducement to determine whether it was voluntary. *Sprague v. State*, 590 P.2d 410, 413 (Alaska 1979). If the accused is a juvenile, "the burden on the state of showing that the confession was voluntary is even heavier than it would be with an adult." *S.B.*, 614 P.2d at 789 (citing *Quick v. State*, 599 P.2d 712, 720 (Alaska 1979)).

■ We likewise decline to adopt a rule that would render inadmissible per se all confessions obtained after a *Miranda* waiver induced by improper conduct, no matter how slight. However, we now hold that certain improper conduct is so coercive as to render a *Miranda* waiver involuntary without regard to the totality of the circumstances.

■ In the case at bar, the troopers' conduct in retaining Webb's driver's license and conditioning its return on his giving a statement was so coercive as to render his *Miranda* waiver involuntary.

Webb was removed from his car, placed against the hood, and patted down in the presence of three troopers. The troopers seized the package, took Webb's driver's license and gave Webb his *Miranda* warnings. When Webb asked for the return of his driver's license, the troopers made it clear to him that the driver's license would be returned only on the condition that he went to the office and gave a statement. Webb was given the mixed message that while he had the right not to incriminate himself, he had to balance the importance of that right against the importance of recovering his driver's license.

Had Webb refused to go with the troopers to the office, he would have been unable to drive his car legally. *See* AS 28.15.-011(b). This court has held that a driver's license is a valuable property interest which may not be taken without due process of law. *Barcott v. State, Dep't. of Public Safety*, 741 P.2d 226, 228 (Alaska 1987) (citing *Champion v. Dep't of Public Safety*, 721 P.2d 131, 133 (Alaska 1986)); *Graham v. State*, 633 P.2d 211, 216 (Alaska 1981). Webb was presented with the illusory choice of exercising his right to remain silent and losing a valuable property interest, his driver's license, or making an incriminating statement to secure the return of his driver's license.

■ The Constitution does not contemplate that persons suspected of a crime relinquish one constitutional right in order to preserve another. *See Miranda*, 384 U.S. at 468 n. 37, 86 S.Ct. at 1624, n. 37, 16 L.Ed.2d at 720 n. 37 ("it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation."). In this instance we adopt a per se rule which deems involuntary a *Miranda* waiver obtained by conditioning the exercise of the constitutional guarantee against self-incrimination against the loss of another constitutionally protected interest. To hold otherwise would encourage law enforcement officers to employ inventive means to circumvent the effect of the warning.

### III. CONCLUSION

We conclude that Webb's confession should be excluded. The decision of the court of appeals is REVERSED and the case REMANDED for proceedings consistent with this opinion.