**Uwe PESCHEL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1991.**

Court of Appeals of Alaska.

March 24, 1989.

Linda Wilson, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Following a jury trial, Uwe Peschel was found guilty of one count of misconduct involving a controlled substance in the third degree, AS 11.71.030(a)(1) (possession

of cocaine with intent to deliver). Peschel appeals from the order of the superior court denying his motion to suppress, and from the order denying his motion for a new trial. We remand for additional proceedings.

On September 30, 1985, Sergeant Grimes of the Alaska State Troopers' Anchorage airport detail advised Trooper Allen Storey that an individual thought to be Ken Delaney had departed the Kenai area and was possibly in Seattle for the purpose of obtaining and transporting cocaine back to Alaska. This information had been communicated to Grimes by Sergeant Kallus of the Kenai Narcotics Investigating Unit. Delaney was described as being a white male, forty to forty-five years old, with salt and pepper hair and a beard. He was said to be six to six feet two inches tall, 180–190 pounds, and was described as almost always wearing a silver San Francisco 49'ers jacket.

On the afternoon of October 2, 1985, Kallus told Grimes that Delaney had already delivered the cocaine to Kenai the previous evening by automobile from Anchorage.

Shortly thereafter, at approximately 3:40 p.m., Storey noticed a bearded white male, about forty years old, approximately six feet tall, and weighing about 180 pounds, exit a United Airlines flight from San Francisco at the Anchorage airport. The man, Uwe Peschel, wore a light gold 49'ers jacket, a baseball cap, and carried a white canvas carry-on bag. Storey observed that Peschel went directly to the airline counters serving Kenai and kept his hand on the bag while there.

Troopers Storey and Bowman followed Peschel to the gate area for commuter flights. Peschel stood at a podium near the gate, talking with two women. He did not have the bag in his hand. Storey and Bowman approached Peschel, told him they were police officers, and asked to talk with him. Storey asked Peschel for some identification. Peschel said he had none. Storey then asked to see his airline ticket, which Peschel produced. The ticket was in Peschel's name.

Storey told Peschel that he was conducting a drug investigation and asked if Peschel was carrying drugs. Peschel said no. Storey then asked if he could look inside Peschel's bag. Peschel replied, "What bag?" Storey asked if Peschel had checked his bag, and Peschel said, "Yes." Grimes, who had joined the investigation, pointed to a white canvas bag near the podium and asked Peschel about the bag. Peschel denied that it was his. Storey told Peschel that he had observed him carrying the bag through the airport just moments earlier. Peschel admitted that it was his bag. Storey asked Peschel if he would allow the troopers to look inside the bag. Peschel said no. Peschel then sat down near the windows, about twenty feet from the bag.

At 4:00 p.m., passengers began to board the flight to Kenai. Peschel approached Grimes and asked if he was free to catch his flight. Grimes said yes. Peschel walked toward the gate area, picked up the white bag, and started for the gate. Grimes and Storey approached Peschel and told him that he was free to go, but that his bag would be detained so that it could be searched by a scent detection dog. Peschel said that he would stay with his bag. The flight left without Peschel.

Peschel and the troopers went to the trooper office in the airport. About thirty minutes later, a scent detection dog alerted to Peschel's bag. After the alert, the troopers obtained a search warrant. The troopers opened the bag and discovered about one-half pound of cocaine.

Peschel moved to suppress all evidence obtained as a result of the search warrant because the warrant was based upon illegally obtained evidence. Superior Court Judge Mark C. Rowland denied the motion, holding that there was reasonable suspicion to detain the bag and subject it to a canine sniff, and that the sniff provided probable cause to issue the search warrant.

After trial, Peschel moved for a new trial pursuant to Criminal Rule 33, alleging prosecutorial misconduct and newly-discovered evidence. Peschel also moved for re-

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

consideration of his motion to suppress. The court denied both motions.

▮ On appeal, Peschel's first claim is that the superior court erred in denying his motion to suppress. In reviewing this claim, we must first determine whether the police had reasonable suspicion to detain Peschel's bag pending a sniff by a drug detection dog.

In concluding that a reasonable suspicion existed in this case, Judge Rowland relied on the information concerning Ken Delaney that had been communicated by Kallus to Grimes and Storey at the airport. The judge also relied on Storey's observation of Peschel at the airport. Judge Rowland found that Peschel was strikingly similar to the physical description of Ken Delaney, that Peschel's nervousness and manner were remarkable and not consistent with innocence, that Peschel's disclaimer of ownership of his bag, followed by acknowledgement of ownership, was significant, and that Peschel's inability to produce identification other than his airline ticket was highly unusual.

Peschel argues that these findings, separately or together, do not justify reasonable suspicion. Peschel initially argues that the information originally received from Kallus in Kenai concerning Ken Delaney did not support a reasonable suspicion that Peschel was Ken Delaney, because Grimes was subsequently tipped that Delaney had already returned to Kenai. However, after the officers spotted Peschel at the airport, Grimes called Kallus. Kallus told him it was possible that the cocaine had not yet arrived in Kenai. Kallus said that an undercover officer in Kenai who was trying to buy the cocaine Delaney was to have delivered was apparently being stalled by the person selling the cocaine, possibly in order to give Delaney time to arrive in Kenai. The police thus remained unsure whether Delaney had returned to Kenai, and the information concerning Delaney could still have contributed to the suspicion that Peschel was carrying cocaine.

Peschel next argues that he did not fit the police description. Although there are some discrepancies, they are insignificant given the fact that Peschel fit the description in every major way: age, weight, height, 49'ers jacket, race, and beard. The fact that police suspicion was based in part on Peschel's physical appearance was reasonable.

Peschel also argues that his failure to produce any identification was insufficient to establish a reasonable suspicion. However, there are many cases holding that a failure to produce any identification can be a factor in establishing a reasonable suspicion. *See, e.g., United States v. Borys,* 766 F.2d 304, 311–12 (7th Cir.1985); *United States v. Gonzales,* 842 F.2d 748, 753 (5th Cir.1988). Especially in this case, where the lack of identification was coupled with the information that the police had received from Kenai, Peschel's failure to produce identification could properly be considered as a factor contributing to reasonable suspicion.

Peschel argues that his initial denial that the bag belonged to him did not support a reasonable suspicion that he was transporting drugs. Peschel claims that there can be several innocent explanations for a lack of forthrightness with law enforcement officers. *See, e.g., Moya v. United States,* 761 F.2d 322, 325 (7th Cir.1985). While dishonesty with police officers does not necessarily indicate consciousness of guilt, in this case it was not unreasonable for the police to become suspicious. When asked if the police could look inside his bag, Peschel responded, "What bag?" Peschel stated he had checked his bag in, disclaimed ownership of the bag pointed out by the police, and finally admitted ownership when the police said they had seen him carrying it. Under the circumstances, Peschel's evasive behavior could contribute to reasonable suspicion. *See, e.g., LeMense v. State,* 754 P.2d 268, 273 (Alaska App.1988).

Peschel argues that his nervousness does not justify reasonable suspicion. Many people confronted by the police conducting a drug investigation are nervous, *State v. Garcia,* 752 P.2d 478, 481 (Alaska App. 1988), and nervousness can be entirely consistent with innocent behavior. *See, e.g.,*

*United States v. Andrews,* 600 F.2d 563, 566 (6th Cir.1979). In fact, in other cases it has been argued that reasonable suspicion can be based on the calmness of a suspect. *Id.* at 566 n. 4. The better view may well be that nervousness alone cannot give rise to reasonable suspicion. In this case, however, Peschel's nervousness was one factor among many contributing to police suspicion. Considering the totality of the circumstances, the trial court did not err in finding that reasonable suspicion existed. *LeMense,* 754 P.2d at 272–73; *United States v. Erwin,* 803 F.2d 1505, 1509–10 (9th Cir.1986).

■ We must next consider whether the police conduct in this case exceeded the permissible scope of a limited investigative seizure. The detention of Peschel's bag for a dog sniff amounts to a seizure. *See United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983). In *Place,* the United States Supreme Court found that detention of Place's bag for ninety minutes from the time of its seizure to the time of its exposure to a drug detection dog exceeded the permissible boundary of a limited investigative seizure justified only by reasonable suspicion. *Place,* 462 U.S. at 709, 103 S.Ct. at 2645. The Court discussed a number of factors to consider in determining whether the scope of such a seizure was properly limited: 1) the length of time the bag was detained, 2) whether the police diligently pursued their investigation, thereby minimizing the intrusion on fourth amendment interests, and 3) whether the agents accurately informed the defendant of where they were taking the luggage, how long it would be detained, and how they would arrange for the return of the luggage if the dog did not alert to the luggage. *Place,* 462 U.S. at 709–10, 103 S.Ct. at 2645–46.

■ In Peschel's case, approximately thirty minutes elapsed from the time Grimes told Peschel that his bag was being detained until the dog alerted to the bag. Judge Rowland found this period to be reasonable. Peschel concedes that thirty minutes is not *per se* unreasonable under *Place.* We recognized as much in *Le-*

*Mense,* 754 P.2d at 273–74, where we concluded that a thirty-minute detention of luggage was not unduly intrusive.

Judge Rowland also found that the troopers had diligently pursued their investigation. This finding is supported by the record. The troopers also adequately informed Peschel of where they were taking his bag and when and how it would be returned. After deciding to detain the bag, the troopers informed Peschel that he was free to continue his trip or remain and observe the test in the airport detail office. Sergeant Grimes told Peschel that if he decided to leave and the dog did not alert to the bag, the bag would be sent to Kenai on the next available flight.

These factors tend to support the superior court's conclusion that the detention of Peschel's bag did not exceed the boundaries of a limited investigative seizure. On the other side of the balance, however, we must take into account the fact that the delay in this case was particularly intrusive because Peschel was forced to elect between missing his flight to Kenai and continuing on to his destination without the bag. The intrusiveness of forcing a traveler to make such an election is far from inconsequential. As the Federal Court of Appeals for the Eleventh Circuit said in *United States v. Puglisi:*

> In airport luggage cases, the traveler's possessory interest would be impaired if the seizure of his luggage were tantamount to a seizure of his person, whether actually, because he could not leave without his luggage, or constructively, as in the cases ... where travel plans required him to proceed without his luggage.

723 F.2d 779, 787 (11th Cir.1984). In such cases, the delay involved in performing the search is not the appropriate measure of inconvenience:

> The impairment of an air traveler's reasonable possessory interest in his luggage is especially intrusive when the seizure causes him to depart without his luggage or miss his flight.... The lat-

ter situation is tantamount to an actual seizure of the person.

*United States v. Puglisi,* 723 F.2d at 790.

Peschel's case is illustrative. On the one hand, leaving his bag with the troopers and continuing on his flight would obviously have deprived Peschel of his bag for much more than thirty minutes—quite possibly for more than the ninety minutes found intolerable in *Place.* 462 U.S. at 710, 103 S.Ct. at 2646. On the other hand, remaining with his bag forced Peschel to miss his flight and forego his right to continue on with his scheduled travels.[1] Again, the resulting delay in all likelihood significantly exceeded the thirty-minute period between the time Peschel's bag was seized and the time it was exposed to the drug detection dog.

In circumstances such as these, the police have a special obligation to act diligently to minimize inconvenience to the traveler. *Puglisi,* 723 F.2d at 790. This obligation requires the police to use the least intrusive means possible in conducting their investigation. Had the police had probable cause to believe that Peschel's luggage contained contraband, they would certainly have been entitled to seize his luggage until a warrant could be obtained or until exposure to a drug detection dog could be arranged, regardless of the consequent disruption and inconvenience to Peschel. However, acting on reasonable suspicion alone the police could not properly require Peschel to choose between abandoning his luggage and foregoing his scheduled airline travel unless no less intrusive alternative was reasonably available. *Id.*

The crucial question in this case is thus whether a reasonable, less intrusive alternative was in fact available. Peschel argues that there was a less intrusive alternative: that the troopers could have allowed Peschel to continue on his flight to Kenai with his bag and that they could have made arrangements to have a dog-sniff performed in Kenai. However, Judge Rowland's concern that it would have been inappropriate to let Peschel board the Kenai flight with his bag was well-founded. Allowing Peschel to carry his bag aboard the Kenai flight after being tipped off that he was a suspect obviously would have jeopardized the investigation.

It is not at all clear, however, why it would have been unreasonable to allow Peschel the option of checking his bag through to Kenai in the baggage compartment. The record indicates that narcotics officers and a drug detection dog could have been available in Kenai upon Peschel's arrival. The record discloses no clear reason why arrangements could not have been made to expose Peschel's luggage to a canine sniff upon his arrival there.

In similar situations, other courts have found that allowing a bag to be checked through with the airlines to its final destination is a reasonable alternative to embarking on an immediate search that may result in disruption of scheduled travel plans. *See, e.g., United States v. Puglisi,* 723 F.2d at 791. In *Puglisi,* the defendant was flying from Ft. Lauderdale to Las Vegas via Atlanta. Police officers at the Atlanta airport formed the suspicion that Puglisi was carrying drugs and removed his luggage from checked baggage before it was loaded onto his connecting flight. The police told Puglisi that he was free to go but that his luggage would be retained pending a dog sniff. Puglisi chose to travel on without his bag.

The court in *Puglisi* found that the subsequent delay in performing the sniff, combined with the intrusiveness on Puglisi's right to possession of the bag while travel-

---

1. This choice is not unlike the one presented in *Webb v. State,* 756 P.2d 293, 297 (Alaska 1988). In *Webb,* three Alaska State Troopers took Webb's driver's license and indicated that they would return it only if Webb went to their office and gave a statement. The court found that Webb was presented with the illusory choice of exercising his right to remain silent and losing a valuable property interest, his driver's license, or making an incriminating statement to secure the return of his driver's license.

The Constitution does not contemplate that persons suspected of a crime relinquish one constitutional right in order to preserve another.

ing, rendered the seizure unreasonable. In reaching this conclusion the court specifically found that allowing the bag to be checked through to its final destination and sniffed there would have been a reasonable alternative. 723 F.2d at 783.

Although *Puglisi* differs from the present case because it deals with baggage that was already checked before being seized, it is not clear that this difference is significant. The factual circumstances described in *United States v. Place*, seem relevant in this regard. In *Place*, Place's behavior as he was waiting to check in for a flight aroused the suspicion of federal drug enforcement agents. The agents approached Place as he was proceeding to the gate for his flight, questioned him, and obtained permission to search the suitcases he had checked. Because time for the flight was running short, however, the agents elected to wait until Place arrived at his destination in New Jersey before conducting a search. The court in *Place* did not consider the reasonableness of the police decision to allow Place's luggage to be checked through to its destination. *Place* is relevant to Peschel's case, however, because its facts demonstrate that other law enforcement agencies have been willing to allow suspected drug couriers to check baggage through to their destination, making arrangements for a search upon arrival.

There is nothing in the record of the present case to establish why reliance upon a similar procedure would have been unreasonable. This expedient might have provided adequate assurance against potential destruction of evidence, while giving Peschel the choice of continuing his travels with minimal delay and disruption.

Normally, of course, the state must bear the burden of justifying a warrantless seizure. The duty to demonstrate the absence of less intrusive alternatives in cases such as Peschel's would ordinarily be encompassed in the state's burden. In arguing his suppression motion below, however,

Peschel did not specifically suggest the possibility of checking his bag through to Kenai as an alternative to conducting the search in Anchorage. The state consequently did not develop evidence as to why this option may not have been practical under the circumstances. Similarly, the superior court did not have occasion to address the issue in its findings.

We recognize that there may be sound reasons, of which we are unaware, precluding any procedure other than the one actually followed in Peschel's case. Absent a full opportunity for the issue to be considered at the trial court level, we are reluctant to assume that the expedient of allowing Peschel's baggage to be checked with the airline amounted to a reasonable, less intrusive alternative to detention of his bag for inspection in Anchorage. Consequently, we believe that a remand is necessary. On remand, the state will have the burden of convincing the superior court, by a preponderance of the evidence, that offering Peschel the option of checking his bag through to Kenai would not have been a reasonable and less intrusive alternative.

We emphasize, however, that the mere failure of the police to consider this alternative in advance of Peschel's arrival in Anchorage will not suffice to render it unreasonable. Police officers involved in the investigation of drug trafficking maintain a regular presence at metropolitan airports such as the airport in Anchorage and have a duty to formulate and implement procedures that are reasonably geared to assuring that travelers and their baggage are not subjected to unreasonably intrusive stops and detentions. On remand, the superior court will be justified in finding that no less intrusive alternative existed only if the court determines that immediate detention of the bag for inspection in Anchorage was, under all attendant circumstances, a practical necessity. *See, State v. G.B.*, 769 P.2d 452 (Alaska App.1989).[2]

In hindsight, Peschel can be seen as a drug trafficker who was deservedly

2. In this connection, it is possible to anticipate several potential objections that may be rejected prospectively as insubstantial. First, it might be argued that it would have been unreasonable for the police to allow a suspected drug dealer

like Peschel to board a flight leaving Anchorage. Peschel, however, was not under detention and had been instructed that he was free to go. Second, objection might be raised to Peschel's being placed on the same flight as his bag, even

stopped before his destination. There may seem to be little need for concern over his convenience as a traveler. Yet procedures that we approve today will inevitably become common practices tomorrow. When, as here, potentially intrusive police procedures are triggered by mere suspicion, there is every reason to believe that they will often be visited upon the innocent as well as the guilty. In our view, police acting on reasonable suspicion alone cannot be allowed to force innocent travelers to choose between protracted separation from their personal belongings and disruption of their scheduled airline travel except when it is clear that no less intrusive alternative is available. Any less stringent standard would unduly infringe on the individual rights of privacy and freedom of travel.

This case is REMANDED [3] for further proceedings consistent with this opinion.

if he was not carrying it. Yet, unless some appreciable risk of Peschel gaining access to his bag prior to arrival in Kenai could be demonstrated, his presence in the passenger compartment while his bag was checked through as baggage would seem immaterial. Third, generalized fear of damage, loss, or tampering might be interposed as a reason requiring immediate search in Anchorage. As demonstrated by *Puglisi* and *Place,* however, this type of generalized fear has apparently not previously been viewed as an impediment in other cases. Absent a compelling, case-specific showing here, such a generalized fear would not support rejection of the alternative as being unreasonable.

**3.** Peschel also appeals from the superior court's order denying his motion for a new trial. Peschel moved for a new trial on two grounds: prosecutorial misconduct and newly-discovered evidence. Peschel claims that prosecutorial misconduct arose when the prosecuting attorney over-stepped his bounds in questioning Peschel. Peschel's attorney objected to the question. The trial judge sustained the objection and immediately gave a cautionary instruction. When the court withdraws improper evidence from the jury's consideration and cautions the jury to disregard it, the cautionary instruction is presumed to cure any error that may have been committed. *Brown v. State,* 693 P.2d 324, 327 (Alaska App.1984); *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981). Because Peschel did not

move for a mistrial or request any additional cautionary instructions during trial, he could not properly reassert the same error as grounds for a new trial after receiving the jury's verdict of conviction. To hold otherwise would in effect give Peschel the option of reserving a motion for mistrial and gambling on a favorable jury verdict. *See, e.g., O'Neill v. State,* 675 P.2d 1288, 1291 (Alaska App.1984). Peschel is therefore not entitled to complain on appeal in the absence of plain error. We find no plain error here.

Peschel next argues that new evidence was discovered when the jury noticed that the postmark on a letter found in Peschel's bag was September 27, 1986. This postmark confused the jury because the bag was seized October 2, 1985. Since Peschel failed to demonstrate that he could not have discovered this evidence by exercising due diligence, the requirements for granting a new trial on the basis of newly-discovered evidence have not been met. *See, e.g., Uchitel Co. v. Telephone Co.,* 646 P.2d 229, 239 (Alaska 1982); *Gonzales v. State,* 691 P.2d 285, 286 (Alaska App.1984). Moreover, the decision whether to grant or deny a motion for a new trial is ultimately a matter within the discretion of the trial judge and is subject to reversal only if an abuse of discretion occurs. *Gonzales,* 691 P.2d at 286. Since it does not appear that the evidence, even if newly discovered, would probably have resulted in an acquittal, the trial court did not abuse its discretion.